**In the Matter of the Estate of**

**SARAH SLICE DOROTHY DYER,**
**Deceased,**
**and Her Surviving Husband,**

**WILLIAM ALFRED DYER**

Probate No. 12 - 1944

District Court of the Virgin Islands

Div. of St. Croix at Christiansted

District Court Commissioner

July 23, 1945

─────

**CYRIL MICHAEL,** *District Court Commissioner*

This matter came on for adjudication on the Petition for Distribution.

██ The spouses were married during the Danish administration, therefore, the real property acquired prior to 1920 and not owned separately, is community property.

The wife, Sarah Dyer, died at Christiansted, St. Croix, on the 25th day of October, 1922, intestate, leaving her to survive William Alfred Dyer, and two children, offsprings of the spouses.

The property of the estate consists of some personal property valued at $195.50, and three pieces of real property, two pieces of which the decedent owned as her separate property and valued at $715.00, and the other piece, community property, and valued at $2,100.00, the one-half of which belongs to the husband in his own right. There is a mortgage against this latter piece of property in the amount of $290.45, plus interest.

The attorney for the administrator contends that no inheritance tax is due from this estate and sets up in a memorandum of law regarding adjudication, the following:

"The spouses herein were married during the Danish regime, and as an incident to the said marriage the survivor has certain contractual rights, recognized in this jurisdiction for upwards of one hundred years, which cannot be fretted away at this time. Among these rights are the rights to the use and benefit of one-half of the community property when the said property is not awarded to the survivor rightout [outright], and the use and benefit to all the real property which is the separate and sole property of the decedent free from the payment of inheritance tax.

"The 'Boes Lod', or decedent one-half of the community property is not subject to inheritance tax. The survivor usufructury

[usufructuary] rights in real property is exempted from inheritance tax.

"St. Thomas Byfcgedkenter's Normal Bog, page 231."

 The contention of the attorney that no inheritance tax is due on the use and benefit of all the real property which is the property of the decedent is right; but not because it is a "vested" or "contractual" right, but because the inheritance tax law governing life estates in force at the death of the decedent, which is still the Danish law, makes it so.

"It is the general rule that the law in force at the death of the decedent controls as to the taxability of inheritances and devises." 61 C.J. 1598.

"The taxability of community property inherited by a wife on her husband's death will be controlled by the law in force at the time of the husband's death." McDougal v. First Federal Trust Company, 199 Pac. 11.

The converse of this is also true.

 The inheritance tax law which is still in force in this jurisdiction is the Ordinance of September 29, 1876, and by incorporation, the Ordinance of October 19, 1896█.

Paragraph (section) 2 of the latter ordinance enumerates the interests which are to be exempt from inheritance, as follows:

"Exempt from paying the tax are only: (a), Estates the total assets of which are less than 100-Rigsdaler; (b), money and valuables given for public use and benefit; (c), pensions given to a person for his maintenance, or for other use for a definite time, not longer than the lifetime of one person."

George Washington Williams, former Judge of this court, in his opinion dated October 12, 1926, In the Matter of the Estate of Carl Emil Leevy, Deceased, and surviving wife, Henrietta Magdalena Leevy, and to which the

attorney for the administrator has made reference in his memorandum, states as follows:

"If the life estate is to be exempt from taxation it is to be exempt under Sub Section (c), as being synonymous with pensions. In this jurisdiction annuities and life estates, or the income therefrom have been considered, for more than a century, as being covered by the word 'pension.' As early as September 28, 1816, the Danish Treasury Department advised the Home Office that an annuity payable to a natural son until he became twenty-one years of age is exempt from the tax. A like instruction was given by the Treasury Department to the Home Office, on October 20, 1827, in a case involving the same principle. See also letter to Magistrate of Copenhagen dated June 10, 1833. These were confirmed by further instructions and rulings of the Minister of Finance, 'To All Superior Magistrates,' on August 25, 1849, and on November 11, 1852. These rulings and instructions are to be found in Rescript Books for the years referred to. Therefore, we have more than a century as a precedent for the construction of the word 'pension' that I have given above, and it will be doing quite a violence to interfere with that construction at this date."

This view is correct, not because the Danish law of inheritance makes it so, nor because the survivor can claim the exemption from taxation on the life estate by reason of the marriage contract, but because the inheritance tax law has not been changed.

The only contractual right which the surviving spouse has in the property of this estate by reason of his marriage during the Danish regime, is his right to his share of the community property, which is, of course, one-half of the net value of the community property after the community debts have been deducted.

"The proprietary interest of a widow in community

380

is necessarily contingent. She owns one-half of the residuum after the debts are paid. Until the debts are paid it cannot be certainly known whether there will be any residuum, or if any, what portion of the property will remain to constitute that residuum." 31 C.J. 184, note 20.

█ All other rights the survivor may have in the property of which the wife died seized are those provided for by the law of descent and distribution in force at the time of the death of the wife; to wit, his right to curtesy and his right to the residue of the personal property of the estate, as provided in Title I [II], chapters 12 (§ 1; 15 V.I.C. § 83 note) and 17 § 1(3) (4), St. C. (15 V.I.C. note prec. § 1, § 84 note) of the Code (1921█), as follows:

"When any man and his wife shall be seized in her right of any estate of inheritance in lands the husband shall on the death of his wife, hold the lands for his life as tenant thereof by the curtesy, although such husband and wife may not have had issue born alive."

"The residue, if any, of the personal property shall be distributed among the persons who would be entitled to the real property of the intestate, as provided in this ordinance, and in the like proportion or share, except as herein otherwise provided.

\* \* \*

"If the intestate shall leave a husband and issue, such husband shall be entitled to receive the residue of the personal property."

That the right to the life estate in the decedent's property to which the survivor is entitled is *not* a "contractual right . . . which cannot be fretted away at this time" because the spouses were married during the Danish regime, but rather one which the Legislature has power to change (and did change), was fully discussed by Judge J. McKean, former Judge of the District Court, in the

adjudication entered on June 24, 1924, In the Joint Estate of Mary M. Blackwood, deceased, and her surviving husband, Andrew J. Blackwood, Probate No. 20 - 1923, Frederiksted Sub-Judicial District, as follows:

"In the decedent's half of the joint estate, the rights derive from the statutes of descent and distribution in force at the time of the death of the intestate. Hansen's Estate (supra); Richardson's Estate (supra). This necessarily follows when we bear in mind the familiar legal principle that, before rights derived under public laws have become vested in particular individuals, the legislature may amend or repeal the law without just cause of complaint. To quote Mr. Justice Avery, in the case of Bass v. Roanoke Navigation & Power Co., 19 L.R.A., 247, 253: 'A bare expectancy — such as that of the heir presumptive under the canons of descent, the devisee named in a last will and testament executed by a person still living, the claim to rights by survivorship by a joint tenant, where a statute has made them tenants in common, the right to a forfeiture of interest reserved on a contract on account of usury — is not (as it has been held) protected as a vested right, but may be modified or destroyed at the will of the lawmakers by statute. Cooley, Const. Lim. 4th ed.' "

It is clear, therefore, that the life estate to which the survivor is entitled in decedent's one-half of the community property and in the other property of which she died seized, is a right by the provision of the Code of 1920 (St. Croix█) and not from any contractual right springing from the marriage under Danish law.

█ The same is true regarding the rights of the remaindermen. The fee which they have inherited from their mother in the two pieces of property, which were her sole property, and the fee in her one-half share of

the other piece, after the life estate of their father, are also derived from the provisions of the Code covering descent and distribution.

"When any person shall die seized of any real property, or any right thereto, or entitled to any interest therein in fee simple or for the life of another, not having lawfully devised the same, such real property shall descend, subject to his debts, as follows:

"(1) In equal shares to his or her children and to the issue of any deceased child by right of representation . . ." Code of Laws (1921), Title II, chapter 16, section 1 (15 V.I.C. note prec. § 1, § 84 note).

The attorney for the administrator also contends: "The children rights herein are but vested remainders which possession and enjoyment are of a future, indefinite and uncertain date, and no inheritance tax is collectible thereon because there is no way of knowing when, if ever, possession and enjoyment, or the actual taking of the award, the 'inheritance', will occur."

 As to whether an inheritance tax is due on the remainder at this time, we again have to look at the provisions of the inheritance tax law. Section 3 of the Ordinance of October 19, 1796 (1896?), above referred to, reads in part, as follows:

"The tax is due at the death of the bequeather, but it is only to be paid on the actual inheritance and is to be paid at the closing up of the estate where the distribution takes place."

This estate is ready for closing and therefore the inheritance tax on the remainder is now due to be paid.

Speaking on the collectibility of the tax on the remainder, the Danish Minister in a letter dated August 31, 1891, states:

"If property is inherited subject to a usufruct and there is no succession to the usufruct, the tax is to be paid immediately upon the inheritance with a deduction of five-fold yearly value net of the usufruct.

"The Government can, however, when the circumstances

warrant, grant suspension of payment of inheritance taxes until the death of the usufructuary, and then collect the full amount of taxes without any deduction, though the grant of such suspension, naturally, will depend upon the circumstances in each individual case. It may be remarked, however, that particular consideration should be taken in considering whether or not there may be a possibility of a loss to the Colonial Treasury, and if the immediate payment of the tax would be particularly burdensome to the party concerned. While, as a rule, suspension can be granted when the inheritance is secured by being deposited with the upper guardians, or otherwise, or when the tax is to be paid by the party out of his own means, such delay should not be granted when the request involves real property or movables which may undergo essential change in value by changed economic conditions or in different management."

The method of calculating the value of the life estate or usufruct was changed by the Supreme Court of Denmark on November 8, 1893. It held that the life estate should be calculated on the amount it would cost the beneficiary for a life annuity of the amount of the life estate; which is also the method under American law.

While the government can grant suspension of payment of inheritance taxes until the death of the life tenant, the better policy would be to collect the same at the close of the estate, thereby obviating the necessity of having to record it as an incumbrance against the property.

Paragraph (Section) 7, section (subsection) (b) of the Inheritance Tax Ordinance of October 19, 1796 (1896?), provides:

"As long and in so far as the tax is not paid it rests as an incumbrance on the revenue of the landed property."

384

As his authority for holding that no inheritance tax is due at this time on the remainder, the attorney, in his memorandum, makes reference to the letter of the Danish Exchequer of August 4, 1832, reading in part, as follows:

"As the survivor is entitled to enjoy, use and keep the entire estate without distribution or claim on the part of heirs of the first decedent, and, furthermore, as the estate at the death of the survivor is to be distributed, the Exchequer does not consider that the said dues should be collected at this time, and it has never been the practice to charge the tax prior to the time of distribution, even at the risk of all the property being disposed of, and thereby result in a loss of the tax."

The Danish Exchequer was discussing "Remaining undivided Estates" under Danish law, wherein the survivor has power to divest the heirs of the decedent, and not estates where the survivor has no such power and the fee vests immediately in the heirs of the first decedent, subject to the life estate of the survivor.

The collectibility of the tax on vested remainder at the close of the estate was considered by Judge George Washington Williams, in his opinion already referred to, as follows:

"The administratrix admits that if the remainder were a fixed one, that is, if the property could not be divested from the children by any act of the life-tenant, the tax would be collectible at once and the amount due arrived at by computing the value thereof based on what it would cost to purchase an annuity in the amount of revenue derived from the Estate, the said amount to be deducted from the whole estate and the tax paid on the remaining portion. This is the general view of authorities and the view of the Danish Ministry, as set forth in a letter dated August 31, 1891, and quoted: 'In the Matter of the Estate of Joseph Lewis Lorand, deceased, No. 6, March Term, 1926'."

Because of the uncertainty as to when the remainder-men would come into possession, the attorney for the administrator believes "no inheritance tax is collectible thereon, because there is no way of knowing when, if ever, possession and enjoyment of the actual taking of the award, the 'inheritance,' will occur."

This would be true if the interest of the remaindermen were contingent, capable of being divested; but this is not so. While they have no right of present possession or enjoyment, their right in and to the property is inalienable by the life tenant, but alienable by themselves.

"The interest in community property which devolves upon heirs on the dissolution of the community by the death of a spouse may be alienated by them." 31 C.J. 183; Thompson v. Vance, 110 L.A. 26, 34 S. 112; Webre v. Lorio, 42 L. A. Ann. 178 7S. 460.

It is the opinion of the Court, therefore, that:

1. No inheritance tax is due on the life estate of the husband in the two pieces of property of which the wife died seized in her own right, to wit: No. 35a & 35b Queen Cross Street, Christiansted, St. Croix, and Parcel No. 4 of Estate Cathrine Rest, Matr. No. 12g, Company Quarter, St. Croix;

2. No inheritance tax is due on the life estate of the husband in the decedent's one-half of the other property, to wit: No. 16 Company Street, Christiansted, St. Croix;

3. No inheritance tax is due on the personal property inherited by the husband, it being less than the value of $200.00;

4. That inheritance tax is due on the remainder on the two pieces of property owned by the decedent in her own right, and on the remainder of the decedent's one-half in the property owned by the community, which is subject to a mortgage, after computing and deducting the value of what it would cost to purchase an annuity in the

amount of revenue obtainable from the properties afore-mentioned.

Counsel will prepare an adjudication conforming to this opinion.